UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIMS UNLIMITED LLC,

    Plaintiff,

v.

PROTECH LEADED EYEWEAR, INC.
d/b/a PROTECH MEDICAL,

    Defendant.
_____/

Case No. 22-11859
Honorable Victoria A. Roberts

**<u>ORDER: (1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND; (3) GRANTING DEFENDANT'S MOTION TO DISMISS COUNT II FOR FAILURE TO STATE A CLAIM</u>**

**I.   INTRODUCTION**

Trims Unlimited, L.L.C. ("Trims") is a Michigan corporation with its headquarters and principal place of business in Michigan. Protech Leaded Eyewear, Inc. d/b/a Protech Medical ("Protech") is a Florida corporation with its headquarters and principal place of business in Florida. Trims and Protech entered into an agreement concerning nitrile gloves. Trims alleges breach of contract and conversion.

Protech asks the Court to: (1) dismiss Trims's complaint for lack of personal jurisdiction and improper venue; (2) grant it summary judgment for

lack of personal jurisdiction and; (3) dismiss Count II for failure to state a claim.

The Court finds that it has personal jurisdiction over Protech under Michigan's long-arm statute and that the exercise of personal jurisdiction does not violate constitutional due process. Venue is proper because Protech is subject to personal jurisdiction in this forum. Accordingly, the Court **DENIES** Protech's motion to dismiss for lack of personal jurisdiction and improper venue.

The Court **DENIES** Protech's motion for summary judgment because it has personal jurisdiction over Protech.

Finally, the Court finds that Trims does not sufficiently plead its conversion claim and **GRANTS** Protech's motion to dismiss Count II for failure to state a claim.

## II. BACKGROUND

Protech sells medical grade nitrile gloves to resellers like Trims. According to its Third Amended Complaint, Trims contacted Protech to purchase gloves. After email negotiations, Trims agreed to pay Protech $726,000 for 66,000 boxes of gloves. Protech agreed to deliver them to a New Jersey warehouse owned and operated by a third party.

Shipping and delivery delays marred the transaction. Trims says Protech managed to deliver some boxes of gloves but breached when it failed to timely deliver the entire glove order to the New Jersey warehouse. Protech tried to remedy the breach. According to Trims, Protech agreed to pay installments to buy the gloves back from Trims. Trims accepted Protech's proposal and agreed to the sale for nine payments of $32,500.

Trims says Protech again breached their agreement when it made only two of the nine payments.

Protech asks the Court to dismiss Trims's complaint for lack of personal jurisdiction and improper venue. Protech bases its motion on the premise that the parties entered into a single contract. It believes the second agreement to repurchase the gloves from Trims did not create a new contract. Protech asserts that the single contract it has with Trims shows that it did not reach out or avail itself of the laws or businesses of Michigan.

Protech also moves to dismiss Trims's conversion claim. It says Michigan's separate and distinct doctrine for tort actions requires a plaintiff to plead a duty owed to it that is different from the contractual duty breached. It claims Trims fails to do so.

Regarding Protech's jurisdictional challenges, Trims says Protech knew it was a Michigan based company and continued transacting with it.

Trims also says that the agreement to repurchase the gloves constituted a new contract—one Protech initiated, crafted, and performed. Trims claims that Protech's cumulative contacts meet due process requirements and allow this Court to exercise jurisdiction.

Trims also rebuts Protech's failure to state a claim challenge. Trims says its pleadings satisfy the elements of conversion under Michigan law.

### III. LAW AND ANALYSIS

Protech and Trims disagree about how the Court should characterize and evaluate the second agreement. Trims says this second agreement is a new contract. Protech says the agreement was merely a favor and has little significance.

At this juncture, the Court does not weigh disputed facts and determine which party is correct. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *See also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Instead, the Court must view pleadings in the light most favorable to the

plaintiff to determine if jurisdiction is proper. *Id*. For now, the Court accepts Trims's characterization.

Trims's pleadings allege a second contract to sell gloves. Trims says Protech reached out to it for this second contract. Trims proffers facts that demonstrate an offer, acceptance, consideration, and meeting of the minds. Even if Protech disputed all of these facts—which it does not— the Court must view the pleadings in a light most favorable to Trims. The second agreement is a new contract.

The Court turns to the merits of Protech's personal jurisdiction challenges, venue challenge, and its motion to dismiss for failure to state a claim.

### A. Protech's Jurisdiction and Venue Challenges

#### 1) *Lack of Personal Jurisdiction*

Protech moves to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Under this rule, the plaintiff must state "specific facts" which establish that personal jurisdiction exists over the non-resident defendant. *Zakharov*, 667 F.3d at 711. When the court does not conduct an evidentiary hearing on personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff need only make a prima facie showing of jurisdiction by a preponderance of the evidence. *Id*; *CompuServe,*

89 F.3d at 1262.

In diversity cases, the Court's exercise of personal jurisdiction over a defendant must be authorized by state law and comport with the 14th Amendment's Due Process Clause. *Id*. However, Michigan's long-arm statute extends to the limits imposed by federal constitutional due process requirements. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Therefore, in Michigan, the Court need only "determine whether the exercise of personal jurisdiction over [the defendant] comports with constitutional due process." *Id*.

Under the Sixth Circuit's three-part test, the Court's exercise of personal jurisdiction comports with due process if: (1) the non-resident defendant purposefully availed itself of the privilege of acting or causing a consequence in the forum state; (2) the cause of action arose from the defendant's Michigan activities, and; (3) the defendant actions, or the consequences they cause, have a sufficiently substantial connection to the forum state such that the exercise of jurisdiction is reasonable. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017).

      i. Purposeful Availment

An out-of-state defendant must purposefully avail itself of the privilege of acting or producing consequences in the forum state. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002). Purposeful availment exists when the defendant's conduct creates substantial connections and contacts with the forum state, and where these connections and contacts are such that the defendant should reasonably anticipate being haled into court ..." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014). *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, (1985).

In *Burger King*, the Supreme Court addressed a court's exercise of personal jurisdiction and due process in the context of contracting parties. The Court held that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state as a consequence of their activities. 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)); *See also S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968).

The *Burger King* Court also held that a single contract does not automatically establish the necessary contacts and connections in the forum state. *Id*.

7

The Supreme Court instructs lower courts to also consider other factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

Protech says it did not ship the gloves to Michigan, does not have employees in Michigan, and did not intend to obtain any privilege by selling or delivering goods to Michigan, and argues that its attempt to buy back the gloves did not create substantial connections to the state under the standard set out in *Burger King*.

Trims points to the voluminous communications between the parties as evidence of purposeful availment. It also says that the second contract establishes purposeful availment because Protech reached out to a Michigan company to purchase the gloves and create future obligations. When taken together, Trims says Protech's conduct is enough to support purposeful availment. The Court agrees.

Trims initiated contact with Protech to buy the gloves. The parties then engaged in lengthy discussions. They communicated via email over months about price, shipping, inventory, and delivery issues. While this transaction and related communications alone might not be sufficient to establish personal jurisdiction, the Court also considers the second contract.

When Protech could not perform under the initial agreement, it reached out and crafted a new deal with Trims. Under the second contract, Protech bought supplies owned by a Michigan company. Protech says it did not know Trims was a Michigan company. However, Trims asserts it did. And the facts suggest Protech knew or should have known—especially when it proposed the second contract.

The new contract also suggests Protech's desire to continue its relationship with Trims; it purposefully created new and ongoing obligations with a Michigan company. These contacts are such that Protech could have reasonably anticipated being haled into a Michigan court.

    ii. Arising From

The operative facts of the controversy must arise from the defendant's contacts with the state. *Calphalon Corp.*, 228 F.3d 718, at 723. Physical presence in the state is not a requirement in the "arising from" analysis. *See Hahn v. Costway* LLC, No. 20-12396, 2020 WL 6544816, at *4 (E.D. Mich. Nov. 6, 2020).

Protech says Trims's allegation that Protech failed to deliver the gloves to the New Jersey warehouse is the operative fact of the controversy. It claims this alleged nonperformance has no connection to Michigan. But Trims focuses on the second contract. It says Protech's offer to buy the

glove back, preparation of the purchase order, and the installment payments are all operative facts of the breach claim. It claims these facts relate to Protech's activities in Michigan. Trims is correct.

The Sixth Circuit notes that the "arising under" prong has a "lenient standard." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544 (6th Cir. 2007). Plaintiff's cause of action need not "formally 'arise from' defendant's contacts with the forum;" instead, it suffices that the cause of action has a "substantial connection with the defendant's in-state activities." *Third Nat'l Bank v. WEDGE Grp*., 882 F.2d 1087, 1091 (6th Cir.1989); *S. Mach*., 401 F.2d at 384 n. 27. The two contracts—especially the second—are Protech's in-state activities. Trims's claims all stem from the breach of these contracts.

Further, because the cause of action is for breach of contract by a defendant who has availed itself of the forum state, the cause of action "naturally arises from the defendant's activities in the forum state". *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)

### iii. Reasonableness

The final prong of this due process analysis mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the

exercise of jurisdiction over the defendant reasonable." See *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003). Since the "purposeful availment" and "arising from" elements are met, the defendant's burden is increased to rebut this part of the test. *See Air Prods.*, 503 F.3d at 554.

The Supreme Court identifies several relevant factors in the reasonableness inquiry, notably "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1169-1170 (6th Cir. 1988).

Protech says that Michigan is not a reasonable forum state because the breach occurred in New Jersey and had no effect on Michigan. It argues that Trims failed to allege any facts that support the reasonableness of litigation in Michigan. Trims says this Court's jurisdiction over Protech does not burden the Florida company. Trims asserts that it and Michigan have a great interest in resolving the dispute, and no other state has a sufficient interest. The Court finds that Trims's arguments support a finding of reasonableness.

While Protech's representatives may be burdened by traveling from Florida for this litigation, Michigan has a clear interest in protecting a Michigan company. Protech offers little evidence that another state has a

sufficient interest in resolving the dispute.

Further, because there is an inference of reasonableness when the "purposeful availment" and "arising from" prongs are satisfied, and because this Court must not consider any of Protech's contradicting assertions absent a hearing, the exercise of jurisdiction is reasonable under the circumstances. *Valicor Separation Techs., LLC v. Three Rivers Energy, LLC*, No. 2:15-CV-11265, 2015 WL 4488634, at *8 (E.D. Mich. July 23, 2015).

### 2) Improper Venue and Summary Judgment

Protech's motion to dismiss for improper venue turns on personal jurisdiction.

Venue is proper in any judicial district where all defendants reside. 28 U.S.C. § 1391(b),(c)(2). A corporation is deemed to reside in any district where it is subject to personal jurisdiction. *Id*. Because the Court finds that Trims plausibly alleged a basis for this Court's jurisdiction over Protech, venue is proper here.

Alternatively, Protech moves for summary judgment based on jurisdictional defects in Trims's complaint. The analysis above shows that the Court has personal jurisdiction over Protech, and the complaint is not deficient. Summary judgment is inappropriate.

**B. Failure to State a Conversion Claim**

Finally, Protech moves to dismiss Trims's conversion claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Protech says that under Michigan law, a tort action arising from a breach of contract claim requires a breach of duty separate and distinct from the contractual duty. It claims Trims merely repackages its breach of contract claim as a conversion claim.

Protech is correct. The separate and distinct doctrine necessitates the dismissal of Trims's conversion claim.

Under Michigan law, a party's conduct may constitute both a breach of contract and an act of conversion only if there was a breach of a duty separate and distinct from the contractual duty. *In re Romanzi*, 31 F.4th 367 (6th Cir. 2022). For example, a fiduciary duty could arise between contracting parties. That duty would be separate and distinct from the contractual duties and could support a tort action. *Id.; see, e.g.*, *Can IV Packard Square*, 2021 WL 2617988, at *18 (analyzing plaintiff's claim that he was owed a fiduciary duty separate from the duty breached relating to the contract).

Despite amending its complaint three times [ECF No. 4, 16, 21], and responding to Protech's motion to dismiss, Trims fails to allege a duty owed by Protech separate from its contractual obligations. The Court will not give Trims another opportunity to amend its pleadings.

Additionally, to support an action for conversion of money, "the defendant must have an obligation to return the specific money entrusted to him." *Sudden Serv., Inc. v. Brockman Forklifts*, Inc., 647 F. Supp. 2d 811, 815–16 (E.D. Mich. 2008); *Check Reporting Services, Inc. v. Michigan Nat'l Bank–Lansing*, 191 Mich.App. 614, 478 N.W.2d 893, 900 (1991). Stated differently, in a dispute over monies owed, conversion is only applicable when the money is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) and then wrongfully taken. *Id*. See *Trail Clinic, PC v. Bloch*, 114 Mich.App. 700, 319 N.W.2d 638 (1982); *Rennie v. Pentagon Refining Co*., 280 Mich. 1, 273 N.W. 325 (1937)

The facts Trims proffers do not support conversion. When Trims paid for the gloves, it gave the money to Protech; the money was no longer Trims's. Trims did not entrust specific monies to the care of Protech. Protech had no obligation to return the specific monies. Instead, the parties engaged in selling and purchasing goods according to an express contract. Because Trims's cause of action arises from the breach of the contract and not "the appropriation of specific funds in violation of a separate legal duty," its conversion claim fails. *See Brockman Forklifts, Inc*., 647 F. Supp. 2d 811(E.D. Mich. 2008) (citing *Trail Clinic, PC v. Bloch*, 114 Mich. App. 700

14

(1982)) (holding that there was no conversion claim where plaintiff and defendant engaged in the sale and purchase of goods according to an express contract and defendant breached by not delivering).

## IV.   CONCLUSION

Protech's motion to dismiss for lack of personal jurisdiction and improper venue is **DENIED**. Protech's motion for summary judgment is **DENIED.** Its motion to dismiss Count II of Trims's complaint for failure to state a conversion claim is **GRANTED**.

**ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated:  4/3/2023